**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**BARBARA HALEN MCCANN,**

                     **Plaintiff,**                     5:13-cv-801
                                                                   (GLS)

              v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                     **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Meggesto, Crossett Law Firm<br>313 East Willow Street<br>Suite 201<br>Syracuse, NY 13203 | KIMBERLY A. SLIMBAUGH, ESQ. |
| **FOR THE DEFENDANT:**<br>HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | LAUREN E. MYERS<br>Special Assistant U.S. Attorney |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Barbara Halen McCann challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering McCann's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On April 7, 2010, McCann filed an applications for DIB under the Social Security Act ("the Act"), alleging disability since October 7, 2009. (Tr.[1] at 91, 207-12.) After her application was denied, (*id.* at 98-102), McCann requested a hearing before an Administrative Law Judge (ALJ), which was held on October 3, 2011, (*id.* at 25-89, 105-06). On October 21, 2011, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 11.)

4, 7-24.)

McCann commenced the present action by filing her complaint on July 18, 2013 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 10, 11.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 15, 17.)

### III. <u>Contentions</u>

McCann contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 15 at 9-17.) Specifically, McCann claims that the ALJ failed to: (1) render a residual functional capacity (RFC) determination that is supported by substantial evidence; (2) follow the treating physician rule; (3) properly evaluate the opinion of her treating nurse practitioner; and (4) consider the effects of her obesity. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 17 at 5-13.)

### IV. <u>Facts</u>

The court adopts the parties' undisputed factual recitations. (Dkt. No. 15 at 1-9; Dkt. No. 17 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

First, McCann argues that the ALJ's RFC determination is legally erroneous and not supported by substantial evidence. (Dkt. No. 15 at 9-12.) In particular, McCann contends that the RFC determination is not supported by any medical opinion of record, and, thus, not legally sound. (*Id.* at 10-11.) The Commissioner counters, and the court agrees, that substantial evidence supports the ALJ's RFC determination. (Dkt. No. 17 at 7-13.)

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC,

an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[2] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

In the case at hand, the ALJ determined that McCann retains the RFC to perform the demands of light work,[3] as well as the capacity to climb ladders, ropes or scaffolds on an occasional basis and to kneel or crawl occasionally. (Tr. at 15.) Further, the ALJ concluded that McCann requires a sit/stand option and must avoid unprotected heights and moving machinery. (*Id.*) According to the ALJ, McCann suffers no mental, communicative, or manipulative limitations. (*Id.*) In making this determination, the ALJ relied on the opinion of consulting examiner Kalyani Ganesh that McCann suffers no limitation in her ability to sit, stand, or use

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

[3] "Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds." 20 C.F.R. § 404.1567(b). Further, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, *6 (1983).

her upper extremities, and mild to moderate limitations in her ability to walk and climb.  (*Id.* at 17, 307-11.)  Thus, McCann's argument that the only support for the RFC comes from a "single decision-maker" who is not a medical source, is meritless.  (Dkt. No. 15 at 11.)  The ALJ gave "little weight" to the opinion of treating nurse practitioner Carol Stoianoff that, among other things, McCann can walk no more than one block, can use her fingers for fine manipulation only fifty percent of the day, and would likely miss four days of work per month.  (Tr. at 16, 566-70.)  However, the ALJ accepted some of the limitations adduced by Stoianoff in finding that McCann requires a sit/stand option and can lift no more than twenty pounds.  (*Id.* at 15, 568-69.)

The ALJ also relied on McCann's ability to, at the time of the hearing, work three eight-hour days per week as a triage nurse in a pediatrician's office, as well as volunteer as an assistant fire chief for ten to fifteen hours per month.  (*Id.* at 17-18, 31, 37-38, 45, 47-48.)  McCann's volunteer work required her to sit for thirty-five to forty-five minutes at a time in a command vehicle and sometimes wear full fire gear.  (*Id.* at 48-49.)  The ALJ considered McCann's subjective complaints of pain and fatigue, but found her to be less than fully credible.  (*Id.* at 16.)  The ALJ explained that her

6

credibility determination was based on McCann's recent work history, her ability to drive, clean her home, care for her personal hygiene, and prepare meals, as well as her treatment history. (*Id.* at 17.) Specifically, the ALJ noted that McCann's treatment records indicate that her symptoms were controlled by medication, and she did not receive regular injections in her knees, use an assistive device, or use a transcutaneous electrical nerve stimulation unit. (*Id.* at 17, 50, 330, 333, 405-06, 408, 504, 506, 508.)

With respect to the ALJ's determination that McCann suffers no mental limitations, this decision is supported by the medical opinions of consulting examiner Dennis Noia and non-examining psychological consultant L. Blackwell. (*Id.* at 15, 303-06, 345-48.) According to Dr. Noia, McCann is able to understand and follow simple directions, perform simple and some complex tasks, maintain attention and concentration, attend to a routine and maintain a schedule, learn new tasks, make appropriate decisions, and relate to and interact moderately well with others. (*Id.* at 306.) Dr. Noia did note that McCann "appears to be having some difficulty dealing with stress." (*Id.*) Blackwell agreed with Dr. Noia's assessment and concluded that McCann "retains the ability to perform semiskilled [and]

7

unskilled work on a sustained basis." (*Id.* at 347.)[4]  Further, the ALJ's determination is supported by McCann's testimony that her impairments are primarily physical and she no longer takes antidepressants or anti-anxiety medications. (*Id.* at 43-44, 51.)

Based on the foregoing, the ALJ's RFC determination is supported by substantial evidence.

## B. Treating Physician Rule

Next, McCann argues that the ALJ erred in failing to give controlling weight to the opinion of treating neurologist Kumar Bhagavatula that, due to a mild cognitive impairment and headaches, McCann would be absent from work more than four days per month. (Dkt. No. 15 at 12-14; Tr. at 476-79.) The court disagrees.

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported

---

[4] McCann argues that the ALJ failed to include moderate limitations in maintaining concentration or pace in her RFC determination, limitations which Blackwell indicated in the questionnaire portion of his opinion. (Dkt. No. 15 at 11; Tr. at 346.) However, the ALJ explained that she gave little weight to that portion of Blackwell's opinion because it was inconsistent with McCann's intact attention and concentration on examination by Dr. Noia, her activities of daily living, and her ability to work as a part-time pediatric nurse and direct the volunteer fire squad's response to emergency calls. (Tr. at 14-15.) Further, the ALJ noted that moderate limitations in concentration, persistence, and pace are inconsistent with Blackwell's ultimate conclusion that McCann can perform semiskilled and unskilled work on a sustained basis. (*Id.* at 347.)

8

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

  Here, the ALJ explained that Dr. Bhagavatula's opinion was given "no weight" because McCann sought limited treatment from Dr. Bhagavatula, treatment notes reflect that McCann's headaches were well controlled by

9

medication, and, McCann failed to complain of any side effects of her medications.[5]  (Tr. at 13, 454-75.)  Indeed, in October 2009 and May 2011, Dr. Bhagavatula indicated that McCann's headaches were "well controlled," and McCann's score on the Montreal Cognitive Assessment was normal. (*Id.* at 454, 457-58, 470-71.)  Thus, the ALJ's decision to discount the opinion of Dr. Bhagavatula is legally sound and supported by substantial evidence.  *See* 20 C.F.R. § 404.1527(c)(2)(i), (3), (4).

C. **Evaluating Opinions from "Other Sources"**

McCann also argues that the ALJ failed to properly evaluate the opinion of nurse practitioner Stoianoff.  (Dkt. No. 15 at 14-15.)  Specifically, McCann asserts that, although Stoianoff is not an "acceptable medical source" whose opinion is entitled to controlling weight, the ALJ improperly "summarily dismissed her opinion."  (*Id.* at 15.)  On the other hand, the Commissioner argues that the ALJ properly evaluated Stoianoff's opinion, and her decision to discount the weight given to it is supported by

---

[5] The ALJ's decision indicates that McCann did not treat with Dr. Bhagavatula between October 2009 and May 2011.  (Tr. at 13.)  However, Dr. Bhagavatula's treatment records indicate that he saw McCann on one occasion during this time period.  (*Id.* at 468-69.)  In November 2010, McCann reported to Dr. Bhagavatula that her headaches had decreased in frequency and her medications were working well, but she complained of imbalance and pain in her lower extremities.  (*Id.*)  Inasmuch as this treatment note supports the ALJ's conclusion that McCann's headaches do not impose the functional limitations suggested by Dr. Bhagavatula, the ALJ's misstatement is, at most, harmless error.

10

substantial evidence. (Dkt. No. 17 at 10-11.) The court agrees with the Commissioner.

Under the regulations, nurse practitioners are not "acceptable medical sources" whose medical opinions may be entitled to controlling weight, but, rather, are considered "other sources" whose opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 71 Fed. Reg. 45,593, 45,595 (Aug. 9, 2006); *see* 20 C.F.R. § 404.1513(a), (d)(1); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 434-35 (N.D.N.Y. 2008). Accordingly, the ALJ considered Stoianoff's opinion that, due to Sjögren's syndrome[6] with inflammatory arthritis, McCann can walk only one block, sit for four hours and stand or walk for four hours in a workday, and needs to elevate her legs if sitting for prolonged periods. (Tr. at 16-17, 566-70.) Further, Stoianoff opined that McCann can frequently lift and carry less than ten pounds, rarely carry twenty pounds, never climb ladders, rarely bend or crouch, and use her fingers for fine manipulations only fifty percent

---

[6] Sjögren's syndrome "is a disorder of [the] immune system identified by its two most common symptoms—dry eyes and a dry mouth. [It] often accompanies other immune system disorders, such as rheumatoid arthritis and lupus." Mayo Clinic, *Sjogren's Syndrome Definition - Diseases and Conditions*, http://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/basics/definition/con-20020275 (last visited Aug. 4, 2014).

of the time. (*Id.* at 569.) According to Stoianoff, McCann is capable of normal work stress, but would be off task five percent of a typical workday and miss four days of work per month due to her impairments. (*Id.* at 569-70.)

The ALJ explained that she gave this opinion "little weight" because it was not supported by the evidence of record including McCann's treatment records, the results of Dr. Ganesh's examination, McCann's daily activities, and her recent work history and volunteer work. (*Id.* at 16-18.) In particular, in November 2009, one month after her alleged onset date, treatment notes indicate that McCann experienced no flare-ups of her inflammatory arthritis since beginning her medication regimen nor any side effects from the medication. (*Id.* at 333.) One month later, she reported worsening aches and pain, which her doctor attributed to McCann's decision to take less medication than prescribed. (*Id.* at 332.) At her next appointment, McCann reported that her medications helped relieve her pain without side effects, and, according to Stoianoff, McCann was experiencing only "some low-grade disease activity." (*Id.* at 331.) Subsequently, in March 2010, McCann reported feeling much better from the combined effects of physical therapy and medication. (*Id.* at 330.) In

12

May 2010, McCann reported to her treatment providers that she was doing well, her hip pain had improved seventy-five to eighty percent due to physical therapy, she experienced only intermittent arthralgias that responded to medication, and was looking for part-time work. (*Id.* at 405, 508.)  Stoianoff indicated that McCann's Sjögren's syndrome was stable. (*Id.* at 508.)

July 2010 treatment notes indicate that McCann's Sjögren's syndrome was not active. (*Id.* at 507.)  In September 2010, McCann had no physical complaints or concerns, including headaches, and her depression was noted to be stable with medication. (*Id.* at 408-09.) Thereafter, in November 2010, McCann was "asymptomatic without myalgias from medication." (*Id.* at 413.)  In February 2011, Stoianoff noted that McCann experienced a "mild fare-up" of her Sjögren's arthritis due to her decision to stop taking one of her prescription medications. (*Id.* at 505.)  However, by her next appointment two months later, McCann was medication compliant and her Sjögren's had improved significantly. (*Id.* at 504.)  The ALJ explicitly considered the objective findings from this examination, which included an absence of active synovitis, an unimpaired range of motion, and very good grip strength. (*Id.* at 17, 504.)

Based on the foregoing, including McCann's ability to work twenty-four hours per week as a nurse and volunteer ten to fifteen hours per month as an assistant fire chief, the ALJ's decision to afford only "little weight" to the very restrictive opinion of Stoianoff is supported by substantial evidence. (*Id.* at 16.) Further, as the ALJ considered the "[s]upportability" and "[c]onsistency" of Stoianoff's opinion, her analysis is legally sound. *See* 20 C.F.R. § 404.1527(c)(3)-(4).

**D.  Obesity**

Lastly, McCann claims that the ALJ failed to consider the effects of her obesity when determining her RFC. (Dkt. No. 15 at 16-17.) Notably, "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." *Cruz v. Barnhart*, No. 04 CIV 9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006). Here, McCann points to no medical evidence that she is limited by her obesity. (Dkt. No. 15 at 16-17.) On the other hand, the ALJ noted that McCann was able to work twenty-four hours per week, volunteer at least ten hours per month as an assistant fire chief, which required her to sometimes wear full fire gear, was committed to regular exercise, and had a "busy and active" life. (Tr. at 17-18, 47-49, 411, 508, 573.) As such, the court determines that the ALJ did

not err in failing to explicitly address McCann's obesity in her RFC determination.

E. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and McCann's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 21, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court